UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HENRY JIMENEZ, BRAYAN SANTIAGO, and GERALD SANTIAGO, <br><br> Plaintiff, <br><br> -against- <br><br> CITY OF NEW YORK, LOWELL TAPIA, JEFFREY WARD, TOMAS SCHIR, PEDRO MARCANO, MAINUL HAQUE, JOSEPH O'SHEA, CHRISTIAN ANASA, EMMANUEL PORTORREAL, JOSHUA MOSCOSO, and POLICE OFFICERS JOHN DOE #1-10 (the names of whom are presently unknown but who were assigned to the 33rd Precinct), <br><br> Defendants. | Case No: 25-cv-7926 <br><br> **COMPLAINT** <br><br> **PLAINTIFFS DEMAND A TRIAL BY JURY** |

Plaintiffs, appearing by their attorneys, Roth & Roth LLP, hereby allege against defendants as follows:

## I. Preliminary Statement

1.      This civil action seeks redress for the unconstitutional and tortious conduct of members of the New York City Police Department ("NYPD") who wrongfully stopped, searched, arrested, and initiated the malicious prosecution of Plaintiffs Henry Jimenez, Brayan Santiago, and Gerald Santiago on September 28–29, 2022. On that day, Plaintiffs were all working as food-delivery professionals and used electric mopeds for their transportation. After working a long day making deliveries in Manhattan, they were all riding their mopeds home together to the Bronx where they lived. As they were traveling north on the West Side Highway bike path in Manhattan, several NYPD officers stopped them, falsely accused them

1

of committing several armed robberies, and subjected Brayan Santiago and

Gerald Santiago to an unduly suggestive show-up identification procedure. Notably,

however, no identification procedure was ever conducted with Henry Jimenez and

he was not otherwise identified by any of the victims at any time.

2.     On the night of September 28–29, 2022, approximately eight different

people reported to the NYPD that they were victims of separate robberies on the

West Side Highway bike path.

3.     At approximately 11:15-11:30 p.m., two victims ("Victim 1" and "Victim

2") reported that they had been robbed at gunpoint on the West Side Highway bike

path at approximately 10:30 p.m. Neither of the victims were able to provide the

NYPD with a detailed or accurate description of the perpetrators because the

robberies occurred at approximately 10:30 p.m., on the dark, poorly lit West Side

Highway bike path, and the victims were focused on the gun that the perpetrators

pointed at them and not on the details of the perpetrators' faces or clothing.

Moreover, the interactions were brief, lasting only approximately one minute each.

Thus, the only description that either Victim 1 or Victim 2 were able to provide to

the NYPD was that the perpetrators were "three or four" Hispanic men riding two

mopeds.

4.     Victim 1 reported that the perpetrators stole the following items from

him: (1) a leather moleskin backpack; (2) a Samsung Galaxy 521 Cell Phone; (3) his

cloth white/pink wallet; (4) his I.D.; (4) $30 cash in singles; (5) a Chase debit card;

(6) a Chase Credit Card with the last four digits 1865; (7) house keys. Victim 2 reported that the perpetrators stole $800 in cash from him.

5.     When the three Plaintiffs were stopped by the Defendant NYPD officers, they were each riding their own moped (not two mopeds as the victims had reported). After they were stopped, each Plaintiff was searched, and none of the items that either Victim 1 or Victim 2 reported as being stolen from them, or the gun that the robbers were reported to have used, were located on any of the three Plaintiffs. Additionally, after the three Plaintiffs were stopped, the Defendant NYPD officers conducted a comprehensive and thorough search of area on around the bike path where they were stopped, and they still did not locate any of the stolen items or the gun.

6.     Moreover, when the three Plaintiffs were stopped, they were traveling north on the bike path to their homes in the Bronx. They were stopped at or near the location that Victim 1 reported that he had been robbed over an hour after that robbery took place; Victim 1 reported that after the robbery, the perpetrators fled south on the bike path. Thus, it also made no sense for the officers to suspect that the Plaintiffs of having committed the robbery, since the real perpetrators had fled south and could have made it to Brooklyn in the time between the robbery and when the Plaintiffs were stopped.

7.     Thus, no reasonably competent and well-trained officer would have believed that the three Plaintiffs could have been the perpetrators of the robberies on Victim 1, Victim 2, or any of the other approximately six robbery victims.

8.      Nevertheless, the Defendant NYPD officers arrested Plaintiff Henry Jimenez—without any of the victims ever identifying him as having been involved in the robbery. Incredibly, the Defendant NYPD officers never even asked any of the victims to attempt to identify him before he was arrested and charged with the robbery of Victim 1 and of possessing a gun (which was never located).

9.      The Defendant NYPD officers did conduct a showup identification of Plaintiffs Brayan Santiago and Gerald Santiago; however, the showup identification procedures clearly violated their constitutional rights and were unduly suggestive.

10.     No reasonably trained officer would have believed the show up procedure was lawful: Victim 1 and Victim 2 were sitting together in the back of the same police car, and only two of the Plaintiffs, Brayan Santiago and Gerald Santiago, were displayed to them from approximately 20-30 feet away, surrounded by NYPD officers, at 11:40 p.m. on the poorly lit West Side Highway bike path.

11.     When one of the victims said he wasn't sure if the two Plaintiffs presented were the perpetrators, an officer aggressively stated "it's a yes or no"; "Victim 1" then stated that he believed Plaintiffs were the perpetrators, while Victim 2 stated that it was "too dark" for him to identify anyone.

12.     No identification procedures were ever conducted with any of the other alleged victims, despite approximately six other victims reporting that they had also been robbed on the West Side Highway bike path that night under similar circumstances.

13.     Despite only two Plaintiffs being presented in the show-up identification, all three Plaintiffs were arrested and charged with Robbery in the First Degree (N.Y. Penal Law § 160.15) and Robbery in the Second Degree (N.Y. Penal Law § 160.10) despite the absence of probable cause. They were arraigned on September 29, 2022, and all charges were dismissed on November 14, 2022.

14.     The arresting officers and their supervisors fabricated inculpatory evidence, withheld exculpatory information (including the Plaintiffs' consistent protestations of innocence and their alibi), and misrepresented the results of a show-up identification. The charging paperwork falsely claimed that Henry Jimenez was identified by Victim 1, when he was never presented to any of the victims for identification. The charging paperwork also omitted the fact that Victim 2 was present with Victim 1 in the back seat of the police vehicle when the showup identification was conducted and stated that he could not identify either Gerald Santiago or Brayan Santiago; and omitted the fact that numerous other victims had reported that they were robbed by the same perpetrators, but that identification procedures were not conducted with them. The charging paperwork also omitted all the other exculpatory information, such as the fact that none of the fruits of the crimes or the gun were located on any of the Plaintiffs or in the area where they were stopped.

15.     Plaintiffs assert causes of action under 42 U.S.C. § 1983 for false arrest, malicious prosecution, denial of fair trial, and failure to intervene, together with a claim under the New York City Administrative Code.

## II. Jurisdiction and Venue

16.     This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331

and 1343 because the action arises under the U.S. Constitution and 42 U.S.C.

§ 1983. The Court has supplemental jurisdiction over the state-law claim under

28 U.S.C. § 1367.

17.     Venue lies in this District under 28 U.S.C. § 1391 because the events

giving rise to the claims occurred in New York County, and all defendants reside in

New York.

## III. Parties

18.     Plaintiffs Henry Jimenez, Brayan Santiago (sometimes spelled

"Brian"), and Gerald Santiago are residents of Bronx County, City and State of New

York.

19.     Defendant City of New York ("City") is a municipal corporation,

incorporated pursuant to the laws of the State of New York.

20.     Defendant CITY maintains the New York Police Department

("NYPD"), a duly authorized public authority and/or police department, authorized

to perform all functions of a police department as per the applicable sections of the

New York State Criminal Procedure Law, acting under the direction and

supervision of the aforementioned municipal corporation, City of New York.

21.     Defendants NYPD officers LOWELL TAPIA (Tax No. 970253)

("TAPIA"); JEFFREY WARD (Tax No. 970308) ("WARD"); Sergeant TOMAS SCHIR

(Tax No. 945438) ("SCHIR"); Sergeant PEDRO MARCANO (Tax No. 940418)

("MARCANO"); Sergeant MAINUL HAQUE ("HAQUE"); JOSEPH O'SHEA (Tax

No. 964193) ("O'SHEA"); CHRISTIAN ANASA (Tax No. 967422) ("ANASA");

EMMANUEL PORTORREAL (Tax No. 959087) ("PORTORREAL"); JOSHUA

MOSCOSO (Tax No. 960976) ("MOSCOSO"); and JOHN DOES 1–10 ("John Does",

the names and number of whom are currently unknown) are and were at all times

relevant herein, officers, employees and agents of the Defendant CITY and the

NYPD assigned to the 33rd Precinct. The Defendant NYPD Officers are being sued

in their individual and official capacities.

22.     At all times relevant herein, the individual Defendant NYPD Officers

were acting under color of state law in the course and scope of their duties and

functions as agents, servants, employees and officers of the Defendant CITY, and

otherwise performed and engaged in conduct incidental to the performance of their

lawful functions in the course of their duties. They were acting for and on behalf of

the NYPD at all times relevant herein, with the power and authority vested in them

as officers, agents, and employees of the NYPD, and incidental to the lawful pursuit

of their duties as officers, employees, and agents of the NYPD and the CITY.

23.     The individual Defendant Officers' acts hereafter complained of were

carried out intentionally, recklessly, with malice, and in gross disregard of

Plaintiffs' rights.

24.     At all relevant times, the individual defendants were engaged in joint

ventures, assisting each other in performing the various actions described herein

and lending their physical presence in support and the authority of their offices to one another.

## IV. Factual Allegations

25.     On the evening of September 28, 2022, at approximately 11:15 p.m., Victim 1 walked into the 33rd Precinct and reported that at approximately 10:30 p.m., three or four Hispanic males riding two dark colored mopeds robbed him at gunpoint at Riverside Drive and West 158th Street on the bike path near the tennis courts and fled southbound.

26.     The victim reported that the perpetrators stole the following items from him: (1) a leather moleskin backpack; (2) a Samsung Galaxy 521 Cell Phone; (3) his cloth white/pink wallet; (4) his I.D.; (4) $30 cash in singles; (5) a Chase debit card; (6) a Chase Credit Card with the last four digits 1865; (7) house keys.

27.     The victim did not provide identifying information regarding the perpetrators other than: three to four Hispanic males, riding two mopeds, and that they had fled south on the West Side Highway bike path at approximately 10:30 p.m.

28.     Shortly thereafter, approximately eight additional victims reported to the police that they were also robbed by several men on mopeds at other locations on the West Side Highway bike path near the location where the first victim reported being robbed. At least one of those victims, Victim 2, reported that the perpetrators stole $800 in cash from him.

29.     At approximately 11:34 P.M., Defendant NYPD Officers Tapia and Ward from the 33rd Precinct responded to the location of the reported robbery on the West Side Highway bike path near the tennis courts in the vicinity of 158th Street—despite the fact that the victim had reported the robbery occurred approximately ***one hour and five minutes earlier*** and the perpetrators had fled southbound on mopeds.

30.     Shortly after 11:34 p.m., Defendants Tapia and Ward observed the three Plaintiffs riding three mopeds northbound on the bike path by the Hudson River.

31.      Despite the victim's description of the perpetrators fleeing southbound approximately ***one hour and five minutes*** earlier on two dark colored mopeds, Tapia and Ward unlawfully stopped the three Plaintiffs as they were travelling northbound on three mopeds, without reasonable suspicion or probable cause.

32.     Plaintiff Henry Jimenez was apprehended by Tapia and Ward. Mr. Jimenez explained to the officers that he had been working as a delivery worker downtown near West Fourth Street and he was riding home to the Bronx with his two co-workers.

33.     Tapia and Ward searched Mr. Jimenez and did not locate any of the fruits of the crime or a gun. Nevertheless, they handcuffed and arrested him, and placed him in the back of an NYPD vehicle.

34.     Thereafter, without ever being identified by any victim of the alleged crimes, or even placed in a showup procedure or displayed to the victims, Mr.

Jimenez was transported to the 33rd Precinct, where he was charged with first and second degree robbery of Victim 1.

35.    Shortly after Mr. Jimenez was detained, additional Defendant NYPD officers arrived at the location, including Defendants O'Shea, Anasa, Portorreal, Moscoso, and Sergeant Marcano.

36.    Plaintiffs Brayan Santiago and Gerald Santiago were stopped shortly thereafter by several Defendant NYPD officers.

37.    The fact that the victim reported the robbery had occurred ***one hour and five minutes*** earlier and that the perpetrators had fled southbound on mopeds alone should have been sufficient for Defendants to realize that Plaintiffs could not have been the perpetrators—as they were stopped at the location of the robbery and were traveling northbound over an hour after the robbery occurred.

38.    After they were stopped, Defendants searched the Plaintiffs and did not locate a gun, or any of the items that either Victim 1 or Victim 2 reported had been stolen from them, including the leather backpack, Samsung Galaxy cell phone, wallet, identification, cash, credit cards, or house keys (victim 1) or the $800 cash (victim 2).

39.    After they were stopped, Defendants conducted a comprehensive search of the area near where the robberies were reported to have occurred, and where the Plaintiffs were stopped, but did not locate a gun, or any of the items the victims reported had been stolen from them.

40.     Moreover, Plaintiffs were all food delivery workers, and were traveling home to the Bronx at the time they were stopped after having worked all day. They each were in possession of food-delivery bags and their mopeds were setup to make food deliveries.

41.     Plaintiffs were nowhere near the robberies when they occurred; they were heading northbound, not southbound; and they did not possess any of the fruits of the crimes. The officers had no description matching Plaintiffs other than general race and gender.

42.     During the stop and search, Defendants engaged in coercive interrogation techniques and were verbally aggressive, with one Defendant officer telling Plaintiff Brayan Santiago he was lying when he claimed he was not involved in the robbery.

43.     Nevertheless, Defendants placed handcuffs upon Plaintiffs' wrists, arrested them, and put them in the back of NYPD vehicles, without reasonable suspicion or probable cause.

44.     Victim 1 and Victim 2 were placed in the back of the same police car and brought to the location where two of the Plaintiffs, Brayan Santiago and Gerald Santiago, were stopped to conduct a show-up identification procedure.

45.     Notably, no show-up identification was done with Henry Jimenez. None of the victims—neither Victim 1 nor Victim 2 nor any of the other victims— were ever even shown or asked to identify whether Henry Jimenez was one of the perpetrators.

46.     Despite knowing that there was no physical evidence connecting Plaintiffs to the crimes, and despite the obvious discrepancies between the victims' description of the perpetrators and the Plaintiffs, Defendants Tapia, Ward, O'Shea, Anasa, Portorreal, Moscoso, and Sergeant Marcano all conducted the unlawful show up identifications of two of the Plaintiffs, Brayan Santiago and Gerald Santiago. No reasonable police officer under these circumstances would have believed they had a lawful basis to conduct a show up identification when there was nothing at all connecting the Plaintiffs to the crime.

47.     The circumstances of the robberies made it impossible for the victims to accurately identify the perpetrators. The robberies occurred at approximately 10:30 p.m., when it was fully dark outside, significantly impairing the victims' ability to observe and encode facial details. The interactions were very brief, lasting approximately less than one minute, providing insufficient time for the victims to focus on the perpetrators' faces. Most critically, the perpetrator pointed a gun directly at both victims during the robberies, and Victim 1 reported details of the silver handgun to the police but did not report any details about the appearance of the perpetrators (other than they were three Hispanic males)—demonstrating that his focus was on the gun, not on the perpetrators' faces, clothing, or any other identifying details.

48.     Any reasonably trained and competent NYPD officer would have known that scientific research demonstrates that the presence of a weapon during a crime draws the witness's attention away from the perpetrator's face—a

phenomenon known as "weapon focus"—and that high stress significantly impairs a witness's ability to accurately encode and later identify a perpetrator. Any reasonably trained and competent NYPD officer would have known that under these conditions, any subsequent identification would be inherently unreliable.

49.     The circumstances of the show-up identification were also unduly suggestive and unreliable. First, the Defendant police officers conducted the show up identification with both Victim 1 and Victim 2 together in the back of the same police car.

50.     Conducting the show up identification with both Victim 1 and Victim 2 together in the back of the same police car was a clear violation of good and accepted police practices.

51.     The show up identifications took place at approximately 11:40 p.m. Two of the plaintiffs were shown to the two victims one by one. Victim 1 and Victim 2 were seated in the back of the same police car, while the two Plaintiffs were standing on the bike path approximately 20-30 feet from the car. It was completely dark outside, and the only lighting on the Plaintiffs came from the police officers shining a flashlight on the two Plaintiffs. Under these lighting and distance conditions, it would have been impossible for Victim 1 and Victim 2 to observe sufficient facial detail to make a reliable identification. Moreover, during the show ups, the two Plaintiffs were handcuffed and surrounded by police officers.

52.     No reasonably well-trained police officer could have believed that the circumstances of the show up identifications complied with the lawful requirements

13

for conducting a show up identification and would have realized instead that these circumstances were unduly suggestive.

53.     When one of the victims responded that he was not sure Brayan Santiago and Gerald Santiago were involved in the robbery, one of the Defendant officers responded, "it's a yes or no." This was unduly coercive and suggestive and violated good and accepted best police practices.

54.     Victim 1 then claimed that he positively identified Brayan Santiago and Gerald Santiago.

55.     Victim 2, however, stated that "it is too dark to tell" and that he could not identify either Brayan Santiago or Gerald Santiago.

56.     Despite Victim 2 stating that he could not identify either Brayan Santiago or Gerald Santiago, and the fact that Plaintiff Henry Jimenez was not shown to or identified by any of the victims, the Defendant police officers arrested all three Plaintiffs for allegedly committing the robbery of Victim 1.

57.     The show-up identification procedure employed by defendants was conducted under conditions that rendered any identification unreliable and violated established best practices. Show-up identifications are inherently suggestive because they present a single suspect (or here, a single set of two suspects) to the witness (here, two witnessed together), offering no protection against a witness who feels pressured to identify someone or believes the police must have found the right person. This problem was compounded here, as to suspects were presented to the victims together at the same time. Research demonstrates that show-up

identifications result in significantly higher rates of false identification compared to properly conducted lineups.

58.     The sequence of the show-up identifications further compromised their reliability. Victim 1 and Victim 2 were first shown one suspect; Victim 1 allegedly made a positive identification before being shown the other Plaintiff. This sequence created a confirmation bias effect, where the victim, having already identified one person, would be more likely to identify additional suspects presented by the same officers, believing that police had apprehended the correct group of perpetrators.

59.     Defendants failed to follow established best practices for identification procedures. Upon information and belief, Defendants did not warn Victim 1 and Victim 2 that the perpetrators might not be among the persons shown, failed to conduct the procedure double-blind (where the administering officer does not know who the suspect is), and did not secure an immediate confidence statement from the victims. These procedural failures, combined with the inherently suggestive nature of the show-up, rendered any identification unreliable and constitutionally inadequate.

60.     The reliability of the identification was further undermined by the significant discrepancies between the Victim 1's initial description and the Plaintiffs' actual appearance and circumstances. The victim initially described perpetrators fleeing southbound on *two* dark mopeds, while Plaintiffs were found traveling northbound on *three* mopeds with food delivery bags more than an hour later. The absence of any physical evidence connecting Plaintiffs to the crime—

including the gun, stolen items, or any of the personal property described by the victim—provided additional exculpatory evidence that should have prevented any identification procedure from being conducted in the first place.

61.    The involved officers should have taken into consideration the above factors as unduly influencing and preventing a definitive identification. However, the defendant officers ignored all the objective evidence that demonstrated they lacked reasonable or probable cause to stop or arrest Plaintiffs in the first instance, and that the show up identification procedures were constitutionally deficient. Instead, defendant officers unlawfully arrested all three Plaintiffs based on the inadequate show up identification of only two of the Plaintiffs, which was insufficient to provide probable cause.

62.    Following the show-up identification of Brayan Santiago and Gerald Santiago, all three Plaintiffs were taken to the 33rd Precinct. Henry Jimenez was interrogated, during which he was told there were a total of eight robbery victims, none of which identified Mr. Jimenez. Despite the discrepancies between the victim's descriptions and the Plaintiffs, the unduly suggestive show up identification, and the fact that Henry Jimenez was not presented to or identified by a single victim, Defendant Tapia prepared a felony complaint that contained false information accusing Plaintiffs of first- and second-degree robbery, and swore to its contents under oath. Henry Jimenez was not present during the show up identification and was charged solely based on the alleged identification of Brayan Santiago and Gerald Santiago by one of the victims.

16

63.     Sergeants Schir, Marcano, and Haque reviewed and approved the arrest, despite obvious inconsistencies between Plaintiffs and the reported perpetrators. Schir's approval is documented in the arrest report, and Haque conducted a supervisor review later that evening. These supervisors failed to investigate Plaintiffs' alibis or to verify the complainant's identification.

64.     Other officers, including Joseph O'Shea, Emmanuel Portorreal, Joshua Moscoso, Pedro Marcano, and Christian Anasa, were present at the scene, assisted with the stop, maintained custody of Plaintiffs, and failed to intervene to prevent the violation of Plaintiffs' rights during the unduly suggestive show up identification and the arrest.

65.     Plaintiffs were held overnight at the precinct and arraigned in New York County Criminal Court on September 29, 2022. ADA Paul Barker signed the felony complaint and presented the case. Plaintiffs were charged with Robbery in the First Degree and Robbery in the Second Degree. They entered pleas of not guilty and were released.

66.     On November 14, 2022, all charges were dismissed and sealed. The dismissal constitutes a termination in Plaintiffs' favor.

67.     Throughout the arrest and prosecution, defendants acted intentionally, with malice, and without probable cause. They fabricated evidence by falsely stating that Plaintiffs were identified by the complainant, omitted exculpatory information, and failed to conduct a reasonable investigation.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### FALSE ARREST UNDER 42 U.S.C. § 1983
#### (As to all Plaintiffs Against All Individual Defendants)

68.     Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

69.     Defendants arrested Plaintiffs without a warrant and without probable cause to believe they had committed any crime. Specifically: a. The robbery victims reported perpetrators fleeing southbound on two dark mopeds at approximately 10:30 p.m., but Plaintiffs were traveling northbound on three mopeds over an hour later at approximately 11:34 p.m.; b. No physical evidence connecting Plaintiffs to the robberies was found despite comprehensive searches of both the Plaintiffs and the surrounding area - no stolen items, no gun, no fruits of the crime; c. The victims were unable to provide detailed descriptions of the perpetrators due to poor lighting, brief interactions, and weapon focus during the robberies; d. Henry Jimenez was never presented to any victim for identification yet was still arrested and charged.

70.     No reasonable officer could have believed probable cause existed to arrest Plaintiffs given: a. The clear temporal and directional inconsistencies - perpetrators fled south over an hour before Plaintiffs were found traveling north; b. The discrepancy in the number of vehicles - victims reported two mopeds but Plaintiffs were on three mopeds; c. The complete absence of any physical evidence linking Plaintiffs to the crimes; d. Plaintiffs were clearly food delivery workers with delivery bags and mopeds set up for food delivery; e. The unduly suggestive show-up

identification procedures that violated constitutional standards; f. Henry Jimenez
was never identified by any victim yet was charged based solely on his presence
with the other two Plaintiffs.

71.    Plaintiffs were conscious of their confinement and did not consent to it.

72.    By these actions, Defendants deprived Plaintiffs of their right to be
free from unreasonable seizures, in violation of the Fourth Amendment to the
United States Constitution and 42 U.S.C. § 1983.

**SECOND CLAIM FOR RELIEF**
**MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983**
(As to all Plaintiffs Against All Individual Defendants)

73.    Plaintiffs repeat and reallege each and every allegation contained in
the above paragraphs with the same force and effect as if fully set forth herein.

74.    Defendants, acting individually and in concert, initiated the
prosecution of Plaintiffs by forwarding charging paperwork to the prosecutor that
contained materially false information and omissions.

75.    The materially false information and omissions included, but was not
limited to: a. False claims that Henry Jimenez was identified by Victim 1 when he
was never presented to any victim for identification; b. Misrepresentation of the
show-up identification results by omitting that Victim 2 stated "it is too dark to tell"
and could not identify either Brayan Santiago or Gerald Santiago; c. False
statements about the investigation and probable cause in police reports while
omitting critical exculpatory evidence; d. Deliberately withheld exculpatory
evidence including the temporal and directional inconsistencies, the discrepancy in

number of vehicles, the complete absence of physical evidence, and Plaintiffs' status as food delivery workers with verifiable alibis.

76.     Defendants knew or were deliberately and recklessly indifferent to the truth that probable cause did not exist, as demonstrated by: a. Their knowledge that perpetrators fled southbound over an hour before Plaintiffs were found traveling northbound; b. Their awareness that victims reported two mopeds but Plaintiffs were riding three mopeds; c. Their failure to locate any stolen items, weapons, or physical evidence despite comprehensive searches; d. Their conduct of constitutionally deficient show-up identification procedures under unduly suggestive circumstances; e. Their decision to charge Henry Jimenez despite never presenting him to any victim for identification.

77.     There was actual malice and an absence of probable cause for the criminal proceeding against Plaintiffs.

78.     Plaintiffs were required to return to court on several occasions before all charges were dismissed in their entirety on November 14, 2022.

79.     As a direct and proximate result of Defendants' actions, Plaintiffs were wrongly prosecuted for approximately six weeks and suffered the grievous injuries and damages set forth above.

**THIRD CLAIM FOR RELIEF**
**DENIAL OF FAIR TRIAL – FABRICATION OF EVIDENCE UNDER 42 U.S.C.**
**§ 1983**
(As to all Plaintiffs)

80.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

81.    Defendants fabricated evidence against Plaintiffs by: a. Falsely claiming in charging documents that Henry Jimenez was identified by Victim 1 when he was never presented to any victim for identification; b. Misrepresenting the results of the show-up identification by omitting that Victim 2 stated "it is too dark to tell" and could not identify either Brayan Santiago or Gerald Santiago; c. Conducting constitutionally deficient show-up identification procedures under unduly suggestive circumstances while presenting them as reliable identifications; d. Filing reports falsely suggesting they had probable cause when the evidence clearly demonstrated Plaintiffs could not have been the perpetrators; e. Deliberately concealing exculpatory evidence including the temporal and directional inconsistencies, the discrepancy in number of vehicles, and the complete absence of physical evidence.

82.    Specifically: a. Tapia prepared felony complaints falsely claiming Henry Jimenez was identified by victims while knowing no identification procedure was ever conducted with him; b. The charging documents omitted the critical fact that Victim 2 was present during the show-up and stated he could not identify either Brayan Santiago or Gerald Santiago; c. Defendants failed to disclose that approximately six other robbery victims reported similar crimes but no identification procedures were conducted with them; d. Defendants concealed that

Plaintiffs were food delivery workers traveling home with delivery equipment, contradicting any inference of criminal activity.

83.    This fabricated evidence was forwarded to prosecutors, causing Plaintiffs to be charged and prosecuted for approximately six weeks before all charges were dismissed in their favor.

84.    By fabricating evidence and forwarding that evidence to prosecutors while concealing exculpatory evidence, Defendants violated Plaintiffs' constitutional rights to due process and a fair trial under the Fourteenth Amendment to the United States Constitution.

## FOURTH CLAIM FOR RELIEF
## FAILURE TO INTERVENE UNDER 42 U.S.C. § 1983
(As to all Plaintiffs)

85.    All preceding and subsequent paragraphs are incorporated by reference.

86.    At all relevant times, Defendants Ward, O'Shea, Anasa, Portorreal, Moscoso, Marcano, Schir, and Haque were each present during the misconduct and failed to intervene to stop or prevent the violation of Plaintiffs' constitutional rights.

87.    Defendants Ward, O'Shea, Anasa, Portorreal, Moscoso, Marcano, Schir, and Haque were present during the unlawful stop, constitutionally deficient show-up identification procedures, arrest, and/or prosecution of Plaintiffs, and were aware that Tapia and their fellow officers were violating Plaintiffs' constitutional rights, but failed to intervene to stop or prevent the violation of Plaintiffs' constitutional rights.

88.     Each of the individual defendants had an affirmative duty and a realistic opportunity to intervene to prevent the unlawful arrest, prosecution, and deprivation of liberty that Plaintiffs suffered—including by objecting to the unduly suggestive show-up identification procedures, correcting the materially misleading information in the charging documents, disclosing the obvious inconsistencies between the victims' descriptions and Plaintiffs' circumstances, or investigating Plaintiffs' alibis as food delivery workers.

89.     Despite having ample opportunity to do so, none of the individual defendants intervened to prevent the fabrication of evidence regarding Henry Jimenez's alleged identification, the concealment of exculpatory evidence, the conduct of constitutionally deficient show-up procedures, or the forwarding of false and misleading evidence to prosecutors.

90.     Indeed, by affirmatively contributing to the false narrative, remaining silent in the face of known misconduct, approving obviously deficient arrests, and failing to disclose plainly exculpatory information, each of the individual defendants substantially contributed to the violation of Plaintiffs' constitutional rights.

91.     As a result of their failure to intervene, Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution were violated.

92.     As a direct and proximate result of this conduct, Plaintiffs suffered the injuries and damages described above, including loss of liberty, reputational harm, emotional distress, and financial hardship.

93.    Defendants' conduct was willful, malicious, reckless, and/or showed a deliberate indifference to Plaintiffs' constitutional rights, and punitive damages should be imposed.

<u>**FIFTH CLAIM FOR RELIEF**</u>
**(N.Y.C Admin. Code §§ 8-801 to 8-807; All Defendants)**

53.    All preceding and subsequent paragraphs are incorporated by reference.

54.    Defendants violated Plaintiffs' right under § 8-802 to be free from unreasonable searches and seizures.

55.    Defendants unlawfully seized Plaintiffs by stopping them without reasonable suspicion or probable cause while they were traveling northbound on the West Side Highway bike path, despite knowing that the reported perpetrators had fled southbound over an hour earlier on two mopeds when Plaintiffs were riding three mopeds.

56.    Defendants' unlawful seizure of Plaintiffs was based solely on their general physical description as Hispanic males riding mopeds, without any specific identifying characteristics or evidence connecting them to the reported robberies.

57.    Defendants falsely arrested Plaintiffs without any probable cause or legal justification, detaining them overnight and subjecting them to prosecution for approximately six weeks.

58.    By the actions described above, Defendants, jointly and severally, acting in concert with each other, initiated and continued criminal proceedings against Plaintiffs without probable cause, including fabricating evidence that Henry

Jimenez was identified by victims when no identification procedure was ever conducted with him.

59.    The Individual Defendants caused Plaintiffs to be stripped of their personal property, including their mopeds, delivery equipment, and personal belongings necessary for their work as food delivery professionals.

60.    The Individual Defendants conducted constitutionally deficient show-up identification procedures under unduly suggestive circumstances while withholding exculpatory evidence from prosecutors.

61.    These actions by the Individual Defendants caused Plaintiffs to suffer loss of liberty, emotional distress, reputational harm, and economic damages from their inability to work and the disruption to their lives caused by the false charges.

62.    The City of New York is directly liable as the employer of the individual defendants under New York City Administrative Code § 8-803(b), including for punitive damages.

63.    Qualified immunity is no defense to this claim.

64.    As a result of Defendants' conduct, Plaintiffs suffered damages as set forth above.

## VII. Prayer for Relief

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered for all claims:

i.    Awarding plaintiffs full and fair compensatory damages for physical and emotional injuries, lost income, and loss of liberty as decided by the jury; and

ii.    Awarding plaintiffs full and fair punitive damages as decided by the jury; and

iii.    Awarding plaintiffs reasonable attorney fees pursuant to 42 U.S.C. § 1988 and N.Y.C. Admin. Code § 8-805(a)(2); and

iv.    Granting such other and further relief as this Court may deem just and proper.

Dated:    New York, New York
           September 23, 2025

ROTH & ROTH, LLP

~//s//~

_____
Elliot D. Shields, ED3372
*Counsel for plaintiff*
192 Lexington Ave., Suite 802
New York, New York 10016
212-425-1020
eshields@rothandrothlaw.com